JOHN C. HUNTER, Appellant, v. BURLINGTON, CEDAR
RAPIDS &. NORTHERN RAILWAY COMPANY,
Appellee.

1. **Injury to Property:** DAMAGES: STATUTE OF LIMITATIONS. An
action brought in 1886 for damages against a railway company on
account of its removal of a fence in the year 1880 from premises
adjoining its right of way is barred.

2. ———: ———: PLEADING. The deed conveying the right of way
over the plaintiff's farm to the defendant's predecessor required it to
maintain a lawful fence on said premises along said right of way, but
at the time of the sale of said right of way to the defendant a five-
board fence had been erected thereon. The claim of the plaintiff in
this action being for damages on account of the removal of said five-
board fence by the defendant, *held*, that the court properly refused to
instruct the jury as to damages because of the defendant's failure to
build a lawful fence in accordance with the terms of said deed.

3. **Railroads:** FAILURE TO MAINTAIN CROSSING: DAMAGES: EVIDENCE.
One not acquainted with the value of the farm in question, nor with
values in that locality, having been permitted to testify as to the
effect of a railroad crossing thereon being closed upon the rental
value of said farm, *held*, that it appearing that the witness was a
farmer of large experience, and that he based his answers upon a
plat of the farm before him at the time, the testimony was competent.

4. ———: ———: ———. Being instructed that it was the duty of the
defendant to keep the crossing in question in repair, *held*, that the
jury must have understood that that included all things necessary to
maintain it as a good crossing.

5. **Jury:** VERDICT: APPEAL. Where there is evidence to support the
verdict of a jury, it will not be disturbed upon appeal.

*Appeal from Johnson District Court.*—HON. S. H.
FAIRALL, Judge.

SATURDAY, FEBRUARY 6, 1892.

ACTION to recover damages upon three alleged
causes, namely: For removing the plank of, and
making too narrow, and for failing to maintain, what
is designated in the testimony as the "East Crossing"
on the plaintiff's farm; for tearing up and destroying

what is known as the "West Crossing" on said farm; for removing a five-board fence inclosing the right of way of defendant's road through the plaintiff's farm, and for failing to maintain the same. This case was submitted upon the first two causes, the latter being withdrawn by the court. A verdict was returned in favor of the plaintiff, and, the plaintiff's motion for new trial being overruled, judgment was entered upon the verdict, from which the plaintiff appeals, assigning as error the admission of certain evidence, and the giving and refusing of certain instructions.—*Affirmed*.

*Milton Remley*, for appellant.

*S. K. Tracy* and *A. E. Swisher*, for appellee.

GIVEN, J.—I. The appellant's first contention is that the court erred in not submitting his claim for damages by reason of the removal of the five-board fence. This refusal was no doubt based upon the conclusion that the plaintiff's claim as to the fence was barred. To determine the correctness of this conclusion, we must have in mind just what the plaintiff's cause of action is, and then inquire when it accrued. On the former appeal of this case (76 Iowa, 490), the court held as follows: "We are of the opinion that, while the defendant was under no obligation to maintain the west crossing and the five-board fence, yet the plaintiff, having been in the rightful enjoyment of them, and not having been made a party to the foreclosure proceedings, could not lawfully remove them." It is said elsewhere in the opinion that the deed for the right of way over the plaintiff's farm to the defendant's predecessor, and under which the defendant was holding, did not entitle the plaintiff to a five-board fence, but only to a lawful fence. This cause of action, therefore, is not for the violation of

1. INJURY to property: damages: statute of limitations.

any right given in the deed, but it is because that, at the time the defendant acquired the road by purchase at the foreclosure sale, the plaintiff was in the rightful enjoyment of the five-board fence which had been built in 1873, and, not being a party to the foreclosure, was not divested of that right. Neither the deed nor these facts made it obligatory upon the defendant to perpetually maintain a five-board fence. The plaintiff's right was to enjoy the five-board fence built in 1873. That right was violated by the removal of that fence in 1880, and his cause of action then accrued. This action was not begun until May 11, 1886, and is therefore barred.

It is argued that, notwithstanding the change in the fence in 1880, the plaintiff's right in the new fence was the same as in the old. To so hold is to say that, because of there being a five-board fence along the right of way when this defendant purchased the property, it is under obligation to perpetually maintain such a fence. Such a conclusion is not warranted by the deed nor the former decision of this court.

This conclusion fully answers the appellant's complaint as to the refusal of the court to give the three instructions asked. The first is to the effect that, by renewing the fence built by the former company, the defendant is estopped from denying that the plaintiff had the interest and rights in the renewed fence that he had in the original. The third is to the effect that, under the agreement with the former company set out in the petition, the plaintiff was entitled to a five-board fence; that, by renewing the former fence with a five-board fence, he was led to believe that the defendant recognized the agreement as binding upon it until after the time elapsed that would bar an action for the removal of the fence; and that the defendant was therefore estopped from denying the binding effect of the agreement upon it, and that it was bound thereby to maintain a five-board fence. For the reasons already

stated, this claim of estoppel does not apply. As to
the parol agreement with the former company, it was
held on the other appeal that it was not binding upon
this defendant.

II. The other instruction refused is to the effect
that, under the deed, the defendant was required to
maintain a lawful fence, and that the
fence erected in place of the five-board
fence was not a compliance with the terms of the deed.
The relief asked as to the fence is not for failing to
maintain a lawful fence, but "that said defendant, on
or about the twenty-ninth day of May, 1881, removed
the said five-board fence,   *   *   *   and has since
refused to build the same, or to maintain the said five-
board fence, whereby the plaintiff has been damaged."
There being no claim for failing to build a lawful fence,
this instruction was properly refused. It is a complete
answer to all that is said in support of these instruc-
tions, that to so hold would bind the defendant to per-
petually maintain a five-board fence along the right of
way, when this court has held upon the former appeal
that it was not bound by the agreement made with the
former company, but only by the terms of the deed,
and that by those terms it is only bound to maintain a
good and lawful fence.

III. There was some evidence tending to show
that the west crossing would have needed repairs
between 1881 and 1886; therefore there
was no error in admitting evidence as
to the rental value of the farm by reason
of the crossing being closed, on the hypoth-
esis that the defendant was bound to keep that cross-
ing in repair. A Mr. Ray was permitted to testify
as to the effect that the presence or absence of the
crossing would have upon the rental value of the farm,
over the plaintiff's objection that he was not shown to
be qualified. He was shown to be a farmer of large
experience, and, though not acquainted with the plain-

tiff's farm, or rental values in that neighborhood, yet he gave his answers based upon a plat of the farm. As the opinion was necessarily based largely upon the convenience or inconvenience to the farmer, and as this could be made to appear by a correct plat of the farm, we think there was no error in allowing Mr. Ray to testify.

IV. The court directed the jury to return a verdict as to each crossing, and gave the following form for

4. —: —: —.
the east crossing: "We, the jury, find for the plaintiff on his claims for damages by reason of the alleged acts of the defendant in respect to the east crossing, and assess his recovery in the sum of $———." The instruction as to this crossing was, that it was the duty of the defendant to keep it in good repair, and that the plaintiff claimed that the defendant had removed the planks from the crossing, made it too narrow for the purposes connected with the farm, and refused to build the same, to the plaintiff's damage. The complaint is that this limited recovery to the act of removing the planks and refusing to replace them, while, to keep it in repair, the dirt that would wear and wash away had to be replaced. Being told, as they were, that it was the duty of the defendant to keep the crossing in good repair, the jury must have understood that that included all things necessary to maintain it as a good crossing.

V. The remaining complaint is that the verdict as to the amount of damages is contrary to the evidence.

5. JURY: verdict: appeal.
The verdict as to the east crossing is for "ten dollars per annum, from May 11, 1881, to May 11, 1886, with six per cent. interest per annum." The verdict as to the west crossing is for twenty dollars per annum for the same period. There was some testimony placing the damage as to the east crossing as low as ten dollars a year. While the jury were not at liberty to disregard the testimony, they had a right to

weigh it in the light of their own judgment, and, while we might say the preponderance of the evidence seems to be in favor of a larger sum, yet it was a question for the jury, and there was evidence upon which they might find as they did; therefore, under familiar rules, we cannot interfere with the verdict.

We reach the conclusion that the judgment of the district court should be AFFIRMED.