MARY LONGSHORE v. CHICAGO GREAT WESTERN RAILWAY
COMPANY ET AL., Appellants.

Railroads: UNDERTRACK CROSSINGS: CONTRACT: EVIDENCE. In this
action to enjoin the defendant railway company from closing an
undertrack crossing on plaintiff's land, the evidence is reviewed and
held sufficient to show that at the time of the conveyance of the
right of way a written agreement was entered into between
plaintiff and defendant's predecessor, by which plaintiff was to have
the undertrack crossing in question as well as a surface crossing
at another point, which were to be in part consideration for
the right of way granted.

Same: EXISTING CROSSINGS: NOTICE TO SUBSEQUENT PURCHASER. The
fact that right of way fences were built in and attached to a
span of a railroad bridge forming a fenced passage under the
track, was sufficient to put a purchaser of the road on inquiry
as to whether there was an agreement between its predecessor
and the land owner for an undertrack crossing at that place.

*Appeal from Madison District Court.*—HON. J. H.
APPLEGATE, Judge.

TUESDAY, FEBRUARY 15, 1910.

REHEARING DENIED SATURDAY, MAY 14, 1910.

ACTION to enjoin the defendants from closing an
undertrack crossing on the plaintiff's land. Judgment for
the plaintiff. The defendants appeal.—*Affirmed.*

*Carr, Carr & Evans* and *John A. Guiher,* for appel-
lants.

*Wilkinson & Wilkinson* and *W. S. Cooper,* for ap-
pellee.

Sherwin, J.—In 1887 the plaintiff and her husband conveyed to the Chicago, St. Paul & Kansas City Railway Company for a right of way a strip of ground one hundred feet in width across the plaintiff's farm. The deed was without reservation or condition. Clanton Creek crosses plaintiff's land east and west just south of the defendant's right of way. Just south of plaintiff's house a draw from the north extended to Clanton Creek, and at the time the defendant's road was constructed there was a wagon road down this draw to a ford at the creek. It was not a public highway, but a road that was used by the public, and by the plaintiff in reaching the creek and the south part of her farm. The construction of the defendant's road required a fill across the plaintiff's land. At the east side of the farm it was four or five feet high, and at the west side something less. The track crossed the draw of which we have spoken at an elevation of about ten feet. This draw was bridged when the defendant's road was built, the bridge consisting of three spans, each about twelve feet wide and seven or eight feet high. From the time of the construction of the road in 1887 until this action was commenced the plaintiff used the west span of said bridge as an undertrack crossing. In 1908 the defendant began the construction over this draw of a cement culvert or bridge, with an opening four by five feet, and threatened to fill the balance of the opening under the old bridge. Thereupon this action was brought to enjoin the defendant from destroying the plaintiff's undertrack crossing.

The plaintiff pleaded, and now relies upon a written agreement between herself and the original company by the terms of which she was to have the undertrack crossing in question and a surface crossing west thereof as a part of the consideration for the right of way granted.

1. Railroads: undertrack crossings: contract: evidence.

The evidence is overwhelming that both of these crossings

were agreed upon by the plaintiff and the representative of the railroad company. The doubtful question, if there be one, is whether there was an independent written agreement therefor executed at the time of the conveyance. No such agreement was produced on the trial, and the plaintiff relies upon the testimony of witnesses who claim to have been present at the time it was executed. There is sufficient foundation for secondary evidence; and, if the plaintiff's witnesses are entitled to credit, there was a written agreement for this undertrack crossing. Mr. Clark, the right of way agent who conducted the negotiations and procured the conveyance for the railroad company, testifies that, if any agreement had been made for an undertrack crossing, it would have been in writing. His testimony tends to contradict the plaintiff and her witnesses as to the execution of such a writing, but the most that he can say about it is that he did not usually make such contracts, and that he has no recollection of making one with the plaintiff. The plaintiff herself, while testifying that such an agreement was made, thought that it was embodied in the deed, and because of her testimony the defendant says she should have no relief. The plaintiff was past seventy years of age when she testified. The business was transacted more than twenty years before, and was conducted by her husband, so it is not strange that she was not certain as to the details of it. She testified that Mr. Clark read such an agreement to her, or in her presence, and as it was not written in the deed, it must have been an independent writing, as other witnesses testify. Fraud on the part of Mr. Clark will not be presumed.

The appellants contend that the evidence is not clear and satisfactory as to the terms of the lost writing. The evidence is clear and explicit as to the agreement for the two crossings, and the witnesses say that such agreement was put in writing and signed. It was not, and could

not be, a complicated agreement. The essence and substance of it was that there should be an undertrack and a surface crossing, and we think the evidence clearly shows that it was so written.

In 1893 the Chicago, Great Western Railway Company became the owner of the road by purchase, and it is urged that it had no notice of the plaintiff's right to the under crossing. The evidence shows that the right of way fences were swung in and attached to the ends of the bridge, and that there was a traveled way under the bridge when the defendant purchased. In other words, there were all of the *indicia* of an under crossing, and enough to put the purchaser upon inquiry. *Swan v. Ry. Co.,* 72 Iowa, 650; *Rock Island & P. Ry. Co. v. Dimick,* 144 Ill. 628 (32 N. E. 291, 19 L. R. A. 105); *McCann v. Day,* 57 Ill. 101.

2. SAME:
existing
crossings:
notice to
subsequent
purchaser.

The judgment is right and it is therefore *affirmed.*