No. 12,072.

Denver and Salt Lake Railway Company *v.* Pacific Lumber Company.

Decided May 27, 1929. Rehearing denied June 17, 1929.

Messrs. SMITH & BROCK, Mr. DAVID W. OYLER, for plaintiff in error.

Messrs. QUAINTANCE & QUAINTANCE, for defendant in error.

*In Department.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

.THIS is an action by the Pacific Lumber Company, a domestic private corporation, against the Denver & Salt Lake Railway Company, a public corporation and common carrier, to restrain the defendant company from interfering with plaintiff's use of a crossing over the defendant's railroad track where it passes across the plaintiff's patented land. Further relief was sought in the nature of a mandatory order to compel the defendant to reinstate the crossing which the defendant had removed, and compensatory damages for its destruc-

tion. Upon the trial to the court without a jury the only relief awarded was an order prohibiting any interference by the defendant with the plaintiff's use of this crossing. The decision was based solely on an estoppel in pais which plaintiff pleaded in its replication. The defendant railway company is the owner by purchase of its railroad which the original owner constructed from Denver over the continental divide to northwestern Colorado. The crossing in question is between West Portal and Fraser in Grand county, not far distant from the Berthoud Pass public highway. The railroad was constructed at this point in 1905. The railway company, its builder, acquired its right of way under the Act of Congress of March 3, 1875, as the result of its filing in May, 1904, with the Secretary of the Interior of the prescribed application therefor. There is no evidence in this record that any private or public road or highway was on this land now owned by the plaintiff before the railway company acquired its right of way. While the road was in process of construction at this point in 1905, there was a wagon road that was used for hauling ties from the adjacent country to the railway company's right of way. The railway company, after its road was built, permitted the crossing on and over its right of way to remain for some years and later removed it.

The right of way granted by this act of Congress is more than a mere easement. It amounts to a qualified or limited fee, and so long as the defendant railway company maintains its line of road it has the right of exclusive use and possession of its right of way. The grant conferred by the act is of corporeal property. The Interior Department has consistently so held and the Supreme Court of the United States in numerous decisions has put its stamp of approval upon the Secretary's ruling. *Noble v. Union River L. R. Co.,* 147 U. S. 165, 13 Sup. Ct. 271; *Northern Pacific Ry. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, in which other cases are cited. At the trial the plaintiff did not claim or attempt

to prove that this private road was in existence when the railway company's right of way was secured in 1904. Indeed, the plaintiff's grantor did not acquire his land until 1908 and then by cash entry, and the inception of the plaintiff's ownership by purchase of the entryman was in 1917, long after the railroad was built and the defendant's right of way was secured. Plaintiff does not claim that this road across the defendant's tracks is a public road. It admits that the crossing in question is its own private property and used for its own private purposes. The trial court rested its decision for the plaintiff, as stated, on the ground of an equitable estoppel. If the judgment can be sustained at all it must be on this ground, for no other possible ground can be found in the evidence. For this reason we do not discuss the other grounds for relief and confine our discussion to the one question of estoppel.

It is too clear for discussion that the act of Congress under which this right of way was acquired, conferred upon the grantee thereof a limited fee with a right of exclusive use and possession thereof so long as the railway was maintained and operated by a public carrier. The United States was interested in the development of its own domain and the private property adjoining this right of way. The railway company owes a duty to the public, which it serves as a public carrier, and in view of the United States the grantee of this right of way could not adequately and fully perform its duty as a common carrier unless its exclusive use of its right of way is retained. This phase of the case is well illustrated in a recent decision of the Circuit Court of Appeals of the Eighth Circuit handed down at the May 1928, term of court, *Midland Valley Railroad Co. v. Sutter,* 28 Fed. (2d) 163. In the course of the opinion, in discussing the right of a railroad company to its right of way secured under this act of Congress, the court said: "The decisions of the national courts and of a majority of the state jurisdictions, however, are to the

effect that the railroad company is entitled to the exclusive use and possession of its right of way, and that the owner of the servient estate has no right to occupy the surface of the land conveyed for right of way, in any mode, or for any purpose, without the railroad company's consent.''

And the court quoted with approval the following from *Jackson v. Rutland etc., R. R. Co.,* 25 Vt. 150, 159: ''The right of a railway company to the exclusive possession of the land taken for the purposes of their road, differs very essentially from that of the public in the land taken for a common highway. The railway company must, from the very nature of their operations, in order to the security of their passengers, workmen, and the enjoyment of the road, have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy, by the former owners, in any mode and for any purpose. Any other view of the subject must lead to the imminent peril of life and property.''

The point decided in that case, as the result of the application of the doctrine thus stated, was that the owner in fee of the land occupied by a railroad company's right of way could not, against the objection of the railroad company, drill for oil on the land at any place on the right of way.

In *Great Northern Ry. Co. v. Steinke,* 261 U. S. 119, 43 Sup. Ct. 316, the Supreme Court, in an opinion by Mr. Justice Van Devanter, in reversing a decision of the Supreme Court of North Dakota, said, among other things, as to the nature and effect of a grant of a right of way under this act, the following: ''A breach of the condition subjects the grant to a forfeiture by the United States; but neither laches on the part of the company nor any local statute of limitations can invest individuals with any interest in the tract, or with a right to use it for private purposes, without the sanction of the United States.''

■ · Under that decision it was not competent for the defendant grantee of this right of way, or its successor in interest, to bargain away its right of way, or permit its use by the plaintiff for any private purposes of his own. As we have already said, the use of this crossing, and of the wagon road over which the plaintiff traveled, was admittedly private. It was not a public highway in any sense of the term. The plaintiff cites and relies upon *Swan v. Burlington, Cedar Rapids & N. R. Co.*, 72 Iowa, 650, 34 N. W. 457, upon the question of estoppel, in which his contention was sustained by the trial court in the pending case. That case, however, is not in point or authority for this holding. There a railroad company had built a railroad and entered into contracts with adjoining land owners for a railroad crossing over its right of way. A subsequent purchaser of the railroad company at foreclosure sale, the court held, took subject to the crossing. That case is entirely different from the one under consideration and is no authority whatever for any contention made here by the plaintiff.

*Gyra v. Windler*, 40 Colo. 366, 91 Pac. 36, 13 Ann. Cas. 841, is cited by the defendant as authority, not on the question of estoppel, but on prescription, and while it is not necessary definitely to pass upon the question we may say that the Gyra case is entirely different from the one now under review. In *Horne v. Hopper*, 72 Colo. 434, 211 Pac. 665, it was held, among other things, that a permissive use will never ripen into an easement by prescription regardless of the length of time of such use.

■ In reaching the conclusion that the judgment must be reversed we refer briefly to the unfortunate result to the plaintiff. The tendency of the evidence leads to the conclusion that this railroad crossing forms part of a private way by which only the plaintiff is able fully to enjoy its property rights in passing back and forth between it and the public highway. Our conclusion here must not be taken as a holding that plaintiff is without any remedy. If a public highway at this point is desir-

92

able and permissible, our statutes point out how it may be established. If the plaintiff possesses the right to secure a private way for its own convenience and use, and if the railway company is bound to give it to plaintiff, as to which we express no opinion, our decision is not to be taken as denial or affirmation of such a right. This court is bound by the decisions of the Supreme Court of the United States, as to the nature and extent of the right which a railroad company secures, and is entitled to enjoy, of the right of way for its line of railroad under this act of Congress. The judgment of the district court is therefore reversed, and the cause is remanded with instructions to the trial court to dismiss the complaint. In so doing we do not wish to hold, as above stated, directly or indirectly, that the public authorities may or may not provide crossings of this railroad right of way, in connection with public roads, and as defendant company states in its brief, it may be that the way is open to this plaintiff in a proper case to compel the establishment of a private crossing. The case, however, as made by the plaintiff in its complaint and replication proceeds upon the theory that the plaintiff has an existing right to the use of this crossing. Our decision here is not to be taken as foreclosing the public authorities of the state from securing a public, or the plaintiff from obtaining a private, crossing.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE ALTER concur.